UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE MAHONE,

                   Petitioner,

                                                       Case Number 13-11337
v.                                              Honorable David M. Lawson

DAVID BERGH,

                   Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lance Mahone has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions of two counts of first-degree criminal sexual conduct and one count of unarmed robbery. After an Oakland County, Michigan jury found him guilty, Mahone was sentenced to concurrent prison terms of 81 months to 40 years in prison for criminal sexual conduct and five to fifteen years in prison for robbery. The habeas petition raises three issues regarding the admission of hearsay evidence, the dismissal of an African-American man from the jury pool, and trial counsel's representation of the petitioner. The respondent answered the petition arguing that the state court's adjudication of the petitioner's evidentiary claims is not cognizable in a federal habeas action and the petitioner failed to exhaust state remedies for his second and third claims. The Court has determined from a review of the pleadings and record that the petitioner's claims lack merit and do not warrant habeas relief. The petition, therefore, will be denied.

I.

The petitioner and his co-defendant, Evan Burney, were tried jointly before a single jury in the Oakland County, Michigan circuit court. The Michigan Court of Appeals accurately summarized the evidence adduced at trial as follows:

> The victim was working as a prostitute at the time of the offense, a fact that was fully explored before the jury by both the prosecution and the defense. The codefendants initially sought to procure her services after finding an online advertisement that had been placed by the victim's working partner. The victim testified that she refused to see two customers at once, whereupon the codefendants initially left. They then returned, tricked her into opening the door, robbed her of her cell phone and computer, and sexually assaulted her; they were interrupted by the arrival of another customer. [Mahone] testified that the interaction had been completely consensual until interrupted by the other customer's arrival. However, he and Burney took their money back after the acts in question and, unbeknownst to [Mahone] until they returned to their car, Burney also took the victim's cell phone and computer. The defense theory was essentially that the victim invented the claimed sexual assault as vengeance for the theft and the refusal to pay.

*People v. Mahone*, 294 Mich. App. 208, 211-12, 816 N.W.2d 436, 438 (2011).

The prosecutor's theory was that the two defendants aided and abetted each other in committing the crimes. On May 12, 2010, the jury found the petitioner guilty as charged. After sentencing, the petitioner filed a direct appeal, arguing that (1) the trial court committed reversible error by admitting highly prejudicial hearsay evidence that improperly bolstered the complainant's trial testimony and (2) the trial court deprived him of his constitutional rights by replacing one of the deliberating jurors with an alternate juror. The Michigan Court of Appeals was unpersuaded by the petitioner's arguments and affirmed his convictions in a published opinion. *See Mahone*, 294 Mich. App. at 208, 816 N.W.2d at 436. The petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues. *People v. Mahone*, 491 Mich. 908, 810 N.W.2d 581 (2012) (table).

On March 22, 2013, the petitioner filed his habeas corpus petition.  His grounds for relief allege that (1) his trial was based on improper hearsay, (2) the trial court dismissed the only African-American male in the jury box, and (3) trial counsel provided ineffective assistance.  Pet. at 4-7. The respondent urges the Court to deny the petition because the petitioner did not exhaust state remedies for his second and third claims and the state court's rejection of the petitioner's exhausted evidentiary claims was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.

The exhaustion rule is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  The Court will address the merits of all three claims.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Because Mahone filed his petition after the AEDPA's effective date, its standard of review applies.  Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v.*

-4-

*Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A.

In his first claim, the petitioner alleges that his conviction was based on improper hearsay. Although the petitioner has not identified the hearsay, nor cited any part of the record, the Court understands the petitioner to be making the same arguments that he made on direct appeal.  He argued there that the prosecution repeatedly elicited hearsay statements regarding the complainant's prior consistent statements.

The petitioner contends that the hearsay was highly prejudicial because the disputed fact issues at trial were based entirely on the complainant's credibility, which was crucial to the prosecution's case.  The petitioner argues that the complainant made the prior consistent statements after a motive to fabricate arose, and that the statements were not used to rehabilitate the complainant, but to prove that the incident happened the way the complainant said it did.  The Michigan Court of Appeals determined that, to the extent there were any evidentiary errors, the errors were, or could have been, corrected by curative instructions and there was no basis for reversal.  *Mahone*, 294 Mich. App at 212, 816 N.W.2d at 439.

Errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned on habeas corpus review.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  A state court's evidentiary error rises to the level of a federal constitutional claim warranting habeas corpus relief only if "the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)).

-5-

1.

The first disputed instance of hearsay was police officer Katie Schneider's testimony that the complainant informed her that she had screamed during the criminal incident. Although defense counsel objected to this testimony on hearsay grounds, the trial court overruled the objection. Trial Tr. Vol. II, 17-18 (May 7, 2010.) Officer Schneider then testified that she subsequently contacted two women in the adjacent hotel room and confirmed that they had heard screaming. The trial court determined that this testimony was improper hearsay, sustained defense counsel's objection to the testimony, and informed the jurors that they should disregard the testimony.

Officer Schneider also testified that the complainant had said the defendants used a large liquor bottle to threaten her. But before the trial court could rule on defense counsel's objection, the prosecutor asked Officer Schneider whether she went to look for a liquor bottle after speaking with the complainant. Officer Schneider was permitted to answer that she did look for a liquor bottle and that she found a heavy vodka bottle on one of the beds.

The petitioner argues that, although the trial court sustained some of defense counsel's objections to Officer Schneider's hearsay testimony, the jury nevertheless heard the testimony and the testimony served to bolster the complainant's credibility. The petitioner also points out that the prosecutor referred to the hearsay in her closing argument by stating that Officer Schneider's testimony — that she confirmed the disturbance — corroborated the complainant's trial testimony.

The Michigan Court of Appeals, however, pointed out that the prosecutor's comment during closing arguments was a fair response to the petitioner's testimony that there was no screaming. The Court of Appeals also correctly noted that the inadmissible statements about the

-6-

complainant's screams were struck and that the jury was instructed to disregard them.  Jurors are presumed to follow instructions.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

As for Officer Schneider's testimony that the complainant had said she was threatened with a liquor bottle, the Michigan Court of Appeals found that it was not egregious or prejudicial.  This Court agrees because there was substantial evidence that the complainant felt compelled to engage in sex with the petitioner and co-defendant Evan Burney.  In addition to the complainant's own testimony that the petitioner grabbed her when he first came in the room and covered her mouth to stop her screaming and that co-defendant Burney had threatened to hit her in the head with the liquor bottle, Officer Schneider was permitted to testify that the complainant said she was raped.

There was additional evidence that the complainant made a breathless call to 911 and that her statements to the police and the sexual assault nurse were consistent.  Detective Michael Wojciechowski, moreover, testified that the complainant became teary-eyed and upset when she identified the petitioner in a photo array and that she did not want to touch the cell phone and computer that were taken from her hotel room because the items reminded her of the incident.  And Police Officer Kenneth Rochon testified  that the complainant was in shock, upset, fearful, and in tears when he observed her at the crime scene.

Because of the substantial amount of evidence corroborating the complainant's testimony, the Michigan Court of Appeals reasonably concluded that Officer Schneider's testimony — that the complainant said she was threatened with a bottle — did not cause prejudice.  That conclusion was reasonable, and it compels the further finding that admission of  the complainant's prior consistent statements did not render the trial fundamentally unfair.

2.

The petitioner next points to the testimony of Chinita Trice, who worked with the complainant in the prostitution business by taking calls from prospective clients and giving them instructions on where to find the complainant. The petitioner challenges Trice's testimony that the complainant called her by cell phone on the night in question to tell her that two men had come to her hotel room.

When the issue first arose on direct examination by the prosecutor, Trice merely said that she had responded to the complainant's call by saying that she (Trice) did not know there were two men. The trial court allowed this testimony, but when Trice started to testify about a second call from the complainant, the trial court prevented Trice from saying what the complainant had told her. Trice nevertheless was permitted to say that her response to the complainant was, "[D]on't answer the door for them again."

The issue arose again on the prosecutor's redirect examination of Ms. Trice. Trice was permitted to say that she had told the complainant she did not know there were going to be two men and that her comment was a response to the complainant's statement that "there's two of them." Although defense counsel objected to the comment on the basis that it was hearsay, the trial court responded, "Just answer the question." Even if the trial court's permissive ruling was incorrect, Trice's non-hearsay testimony about her own response to the complainant's calls implied that the complainant had told her there were two men.

Furthermore, although the petitioner contends that testimony about the complainant's prior consistent statement was inadmissible, state evidence law states that "[t]he admission of a prior consistent statement through a third party is appropriate if the requirements of [Michigan Rule of

-8-

Evidence] 801(d)(1)(B) are satisfied." *People v. Jones*, 240 Mich. App. 704, 706, 613 N.W.2d 411, 412 (2000). Those requirements are:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*Id.* at 707, 613 N.W.2d at 412 (quoting *United States v. Bao*, 189 F.3d 860, 864 (9th Cir. 1999)).

The Michigan Court of Appeals found no evidentiary error because the complainant's calls to Trice occurred before the alleged sexual assault and therefore before the complainant had a motive to falsify her testimony. In any event, Trice's testimony about the complainant's telephone calls to her did not render the trial fundamentally unfair.

### 3.

The final instance of alleged hearsay was nurse Ruth Pinto-Cieslak's testimony that the complainant informed her during an examination for sexual assault that: two men came into her room; one of the men threatened her with a liquor bottle and told her to be quiet; one man raped her orally, and one man raped her vaginally; and the men took a laptop and cell phone. Although statements made for purposes of medical treatment or diagnosis can constitute an exception to the hearsay rule, Mich. Rule Evid. 803(4), the petitioner argues that Pinto-Cieslak's testimony was inadmissible because the complainant's comments were not relevant to medical treatment or diagnosis. The Michigan Court of Appeals disagreed and stated that a victim's history and recitation of the circumstances of a sexual assault are properly considered statements made for medical treatment, because injuries can be latent or psychological and not necessarily physical. That conclusion is not unreasonable, but more importantly, it does not impact an area of federal

constitutional law.  This Court cannot second-guess the state court's interpretation of state law, *Bradshaw v. Richey*,  546 U.S. 74, 76 (2005), and in all events, the evidence did not render the petitioner's trial fundamentally unfair.

The disputed hearsay testimony was either admissible under state law or not prejudicial under the circumstances.  Therefore, it was not fundamentally unfair to admit the testimony, and the petitioner has no right to relief on the basis of his evidentiary claims.

B.

The petitioner, who is an African-American, next contends that the trial court erred by dismissing the only African-American man from among the prospective jurors.  Although not so designated in his habeas petition or the state court briefs, the Court construes the petitioner's argument as a challenge based on his constitutional right to equal protection of the law under *Batson v. Kentucky*, 476 U.S. 79 (1986), because the prosecutor exercised a peremptory challenge to exclude a potential juror on the basis of race or gender.  Although the petitioner did not raise this issue on direct appeal, he did object at trial to the elimination of the juror.

The Supreme Court has said that, "[u]nder *Batson v. Kentucky*, 476 U.S. 79 (1986), and later decisions building upon *Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex." *Rivera v. Illinois*, 556 U.S. 148, 153 (2009).

When adjudicating a *Batson* claim, trial courts are to follow a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

-10-

*Davis v. Ayala*, --- U.S. --- , 135 S. Ct. 2187, 2199 (2015) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476-477 (2008)).

A defendant can satisfy step one of the *Batson* process "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94. "[T]he party challenging the peremptory strike must demonstrate that: (1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts, along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *United States v. McAllister*, 693 F.3d 572, 578-79 (6th Cir. 2012). A "defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 476 U.S. at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)).

As an African-American, the petitioner is a member of a cognizable racial group, *Drain v. Woods*, 902 F. Supp.2d 1006, 1020 (E.D. Mich. 2012) (citing *Gray v. Brady*, 592 F.3d 296, 305 n.5 (1st Cir. 2010)), *aff'd*, 595 F. App'x 558 (6th Cir. 2014). And the record indicates that the prosecutor used a peremptory challenge to remove from the jury an African-American man named Adrian Coleman. These facts and Mr. Coleman's uncontroversial statements that he was single, a student at "OCC," and had no children, give rise to an inference that the prosecutor used a peremptory challenge to exclude Mr. Coleman because of his race. In fact, when the issue arose at trial, defense counsel argued that the elimination of an African-American male in a case where the two defendants were young African-American men implied that the prosecutor eliminated the juror on the basis of his race, particularly because the prosecutor did not ask Mr. Coleman any questions.

-11-

The trial court seemed to agree, stating that the defense attorneys had raised a plausible issue. Therefore, the petitioner has established a *prima facie* case of purposeful discrimination on the basis of race.

Under step two of *Batson,* the burden shifts to the prosecutor to offer a neutral basis for eliminating the juror in question.  "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).

When defense counsel objected to the elimination of Mr. Coleman as a juror, the prosecutor explained during a break in jury selection that she challenged Mr. Coleman and was concerned about him because he was less mature and had fewer life experiences than what she felt were necessary to decide the case.  As an example of Mr. Coleman's alleged immaturity, the prosecutor pointed out that Mr. Coleman was laughing with strangers as he left the courtroom, despite the fact that this was a serious case.  She pointed out that she had also excused a young African-American female for lack of maturity.

Although defense counsel maintained that Mr. Coleman might have had life experiences that far outweighed his life experiences at the age of forty-three and that other jurors beside Mr. Coleman were laughing as they left the courtroom, the prosecutor's explanation did not have to be persuasive or even plausible.   *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).  And a potential juror's immaturity and "limited life experiences" can be permissible reasons for a peremptory challenge. *Mitleider v. Hall*, 391 F.3d 1039, 1049 (9th Cir. 2004).  The prosecutor therefore carried her burden of offering a neutral basis for eliminating Mr. Coleman.

-12-

The third step in a *Batson* analysis is whether the petitioner has shown purposeful discrimination.

> [T]he critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.

*Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003) (citation omitted).

The state trial court denied the defense motion to have Mr. Coleman remain on the panel because the court thought that the prosecutor had a valid reason to excuse Mr. Coleman. The court opined that the prosecutor was not attempting to eliminate a juror solely on the basis of race. The trial court also pointed out that the prosecutor had "basically eliminated every young person" when she exercised her peremptory challenges and that two African American women remained on the jury.

The trial court's implicit finding that the prosecutor's explanation for her peremptory challenge was credible is entitled to great deference. *Davis*, 135 S. Ct. at 2199. The trial court's determination that the peremptory strike was not based on race also is entitled to great weight. *Id.* at 2208. The state trial court did not unreasonably apply *Batson*, and therefore the petitioner is not entitled to habeas relief on this claim.

-13-

C.

In his third claim, the petitioner argues that his trial attorney was ineffective. The petitioner argues in an attachment to his petition that trial counsel did not put the prosecution's case to an adversarial testing, that he failed to cross-examine the witness appropriately, and that he was absent during critical times in the trial. The petitioner did not raise this issue in the trial court or on appeal. Therefore, no state court adjudicated the claim on the merits, and "the deference due under AEDPA does not apply." *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). The Court reviews the claim *de novo*. *Ibid.*

To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "[A] defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." *Ibid.* An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. To establish prejudice from counsel's failure to investigate or call a potential witness, a petitioner must show that had the witness testified, "the result of the proceeding would have been different." *Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010) (quoting *Strickland*, 466 U.S at 694).

The Supreme Court has explained that

"[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371. . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690.

*Richter*, 562 U.S. at 105.

-14-

The petitioner alleges that trial counsel cross-examined a witness inappropriately and did not put the prosecution's case to adversarial testing. The Supreme Court has stated that, "[i]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984).

Here, however, the petitioner's attorney made an opening statement, cross-examined the primary witnesses against the petitioner, produced the petitioner as a defense witness, and made a closing argument in which he argued that the complainant was a good actress and not believable, that she was motivated by revenge for the robbery and lack of payment for her services, and that, at most, the petitioner was guilty of being an accessory after the fact on the robbery count. In addition, as noted above, counsel made a strong argument in favor of keeping Mr. Coleman on the jury, and he objected to hearsay testimony. He also moved for a mistrial when one of the deliberating jurors stated that she could not continue with deliberations. The petitioner's argument that counsel did not put the prosecution's case to adversarial testing is unpersuasive.

The petitioner has not identified the witness he believes was cross-examined inappropriately, nor has he stated what was inappropriate about the cross-examination. His conclusory and perfunctory claims of ineffective assistance of trial counsel "are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012); *see also Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) (stating that "[c]onclusory allegations, without evidentiary support, do not provide a basis for habeas relief").

The petitioner also contends that trial counsel was absent during a critical phase of the trial. "Under [Supreme Court] precedents, once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227–28 (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). A stage is not "critical" if "there is minimal risk that . . . counsel's absence at such stage[] might derogate from [the defendant's] right to a fair trial." *Wade*, 388 U.S. at 228.

The record indicates that counsel was absent for six minutes when the trial court, the prosecutor, and counsel for the co-defendant discussed the deliberating jury's request for the tape of the complainant's 911 call to the police and a transcript of the petitioner's testimony. At the time, however, counsel for co-defendant Evan Burney agreed to represent the petitioner, and the petitioner stated on the record that he had no objection to counsel for Burney standing in for his attorney. Furthermore, the jury previously had heard the 911 tape, counsel for co-defendant Burney stated that the petitioner's attorney had no objection to the jury hearing a DVD of the petitioner's testimony, and the jury ultimately decided not to listen to the DVD.

The petitioner's attorney also was absent on the last day of trial when the alternate juror was questioned about whether he had been exposed to any outside influences. During the same proceeding, counsel for co-defendant Burney renewed the defense motion for a mistrial on the basis that the alternate juror replaced a deliberating juror, and the jury reached its verdict. Substitute counsel, however, represented the petitioner that day. And even though "the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the

-16-

[proceeding] a critical stage for the presence of the suspect's own counsel." *Wade*, 388 U.S. at 238 n.27.

Here, substitute counsel represented the petitioner without any objection from the petitioner. And, with the help of counsel for co-defendant Burney, the substitute attorney eliminated any hazards that might have rendered the proceeding a critical stage for the presence of the petitioner's own attorney.

The petitioner was not left unrepresented at a critical stage of the proceedings. Additionally, he waived his right to have his attorney present on one occasion, and he was not prejudiced by his trial attorney's absence on the second occasion. He has no right to relief on the basis of his claim that counsel was absent during a critical stage of the proceedings.

### D.

In the attachment to the habeas petition, the petitioner alleges that the trial judge improperly dismissed a juror during deliberations and erroneously sentenced him to a tether for life. To the extent the petitioner intended to raise these allegations as additional grounds for relief, the Court will address the claims briefly.

### 1.

First, the petitioner alleges that the trial court erred by sentencing him to a tether for life upon release from prison. The petitioner contends that a lifetime tether applies only when the CSC victim was under the age of thirteen. According to the petitioner, the complainant in this case was nineteen years of age.

The petitioner's claim appears to be based on Mich. Comp. Laws § 750.520n, which reads in relevant part:

> A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953, 1953 PA 232, MCL 791.285.

Mich. Comp. Laws § 750.520n(1) (footnote omitted).

The petitioner's challenge to his sentence on the basis of an alleged violation of a state sentencing statute will not result in relief from a federal habeas court because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The Court therefore declines to grant relief on the petitioner's claim about his sentence to life-time monitoring with a tether.

## 2.

The petitioner also argues that the trial court improperly dismissed a deliberating juror (Lashayal Hicks) and allowed an alternate juror to replace her. The petitioner raised this claim on direct appeal, but the Michigan Court of Appeals concluded that the trial court did not abuse its discretion, nor deny the petitioner a fair trial, by removing the juror.

The petitioner contends that the trial court should have started the trial anew or granted a mistrial rather than remove Ms. Hicks and replace her with an alternate juror. The question under AEDPA, however, "is not whether the trial judge should have declared a mistrial," or "even whether it was an abuse of discretion for her to have done so." *Renico v. Lett*, 559 U.S. at 772-73. Instead, the question is whether the state appellate court's determination that the trial court did not abuse its discretion in failing to declare a mistrial was an unreasonable application of clearly established federal law. *Id.* at 773. It was not.

-18-

The Michigan Court of Appeals explained the background for the petitioner's claim as follows:

> During voir dire, the juror [Hicks] explained that she had friends who were victims of sexual assault and who had been accused of sexual assault. She indicated, however, that she could be fair and impartial, although she was pregnant and would have a hard time paying her bills if she missed many days of work. After the jury was charged, it requested that the victim's telephone call to 911 be replayed twice. The jury also requested that defendant's testimony be replayed, but changed its mind after again reviewing CJI2d 8.1 (intentional assistance) and CJI2d 18.2 (unarmed robbery). The juror then sent a note that stated in relevant part:

>> I need to be dismissed/removed from the Jury at this time. Mentally I am *really* unable to proceed in this case. I feel myself about to have another mental breakdown and it's not good for me and my unborn child. (Stress). I cried over the break and can't really stop crying and talking to one of the other Jurors it all came out and my true feelings and personal biases is really taking an infact [sic] and I don't think its fair. I am stressing myself out + my stomach is feeling pain. So I am scared that I am going to go into early labor because the case is taking a toll on me. I am unable to put behind me my personal + past experiences in coming to a lodgical [sic] conclusion. Please can you please remove me + because of this I am putting our delibeattion [sic] at a stand by.

> The juror was brought back to the courtroom by herself and explicitly told not to discuss how the voting stood but was also informed that she had to explain why she felt she could not deliberate.

*Mahone*, 294 Mich. App. at 215-16, 816 N.W.2d at 440-41.

When she was brought to the courtroom, the juror then explained that she believed she could not continue to deliberate for personal reasons. Although she did not articulate her reasons particularly well, she did reveal that someone in her family had been sexually assaulted and that she had begun to think that would affect her ability to sit as a juror. She also indicated that she did not think she could be fair due to her mind set and past experiences. She denied being mistreated or threatened by the other jurors, but she stated that she really could not return to the jury room and resume deliberations as a fair and impartial juror.

-19-

After the juror provided this explanation and left the courtroom, the prosecutor argued in favor of replacing her with the alternate juror who had already been dismissed.  The petitioner's attorney disagreed and moved for a mistrial.  The trial court denied the motion for a mistrial and stated that the court would contact the alternate juror, question him whether he had been subject to any outside influences, ask him to come in, and instruct the jurors to begin their deliberations anew when the alternate juror was present.  The court subsequently contacted the alternate juror, arranged for him to return to the courtroom on the following day, and instructed the other jurors to begin their deliberations anew with the alternate juror on the following morning.

In light of Ms. Hicks's comments that she could not continue deliberating the case as a fair and impartial juror, the trial court did not abuse its discretion in dismissing her.  As the Michigan Court of Appeals recognized, "[i]t is abundantly clear from the record that the juror was experiencing more than sufficient physical and emotional strain to warrant her removal from the jury, even absent her unambiguous explanation that she simply could not continue deliberations." *Mahone*, 294 Mich. App. at 216-17, 816 N.W.2d at 441.

The remaining question is whether the court should have declared a mistrial rather than replace Ms. Hicks with the alternate juror who had previously been dismissed.  "When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 559 U.S. at 776 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The relevant rule in this case is Michigan Court Rule 6.411, which permits a trial court to retain alternate jurors during deliberations.  The rule also requires trial courts in cases where it retains alternate jurors to (1) instruct the alternate jurors not to discuss the case until the jury is

-20-

discharged and (2) instruct the jury to begin its deliberations anew if an alternate juror replaces a juror after deliberations have begun.

Here, the trial court retained an alternate juror and, before dismissing him, charged him not to discuss the case with anyone. After the court released Ms. Hicks, the trial court informed the jury that it was re-calling the alternate juror and that the jury should begin its deliberations anew once the alternate juror was present. The court specifically stated that the jurors' discussions with Ms. Hicks in the jury room and her release from the jury should not be a part of their discussions or deliberations.

On the following day, the trial court and the attorneys questioned the alternate juror about whether he had been exposed to any outside influences after initially being released from jury duty. The juror stated that he had not discussed the case with anyone, that he had not done any outside research, and that he did not read or see anything about the case in the paper or on television.

These circumstances — the trial court's compliance with Rule 6.411 and the alternate juror's assurances that he had not been affected by any outside influences — do not even suggest that there was manifest necessity to declare a mistrial, and the trial court did not abuse its discretion in denying the defense motion for a mistrial. Therefore, the decision by the Michigan Court of Appeals that the petitioner was not denied his constitutional right to a fair trial was neither contrary to, nor an unreasonable application of, clearly established federal law.

### E.

In a reply to the respondent's answer, the petitioner raises several new claims. These new claims allege that the petitioner is actually innocent, there were inconsistencies in the evidence, his

Fifth Amendment rights were violated, trial counsel failed to communicate a plea offer, the prosecution suppressed material evidence, the trial court was biased, and the jury instructions were incorrect.

"[A] traverse or reply to an answer to a habeas petition is not the proper pleading for a habeas petitioner to raise additional grounds for relief." *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). Consequently, "[a] court cannot consider new issues raised in a traverse or reply to the State's answer." *Ibid.* (citing *Lewis v. Witek*, 927 F. Supp. 1288, 1291, n. 2 (C.D. Cal. 1996)); *accord United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004) (stating that, "[a]s a general rule, this Court does not entertain issues raised for the first time in an appellant's reply brief"); *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682-83 (E.D. Mich. 2002) (stating that "it is not the office of a reply brief to raise issues for the first time") (citing *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993)). The Court therefore will not grant relief on the petitioner's new claims.

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson                          
DAVID M. LAWSON
United States District Judge

Dated:  March 31, 2016

-22-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI